STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. STEPHEN CARRIGAN, PLAINTIFF IN ERROR.

Submitted July 3, 1919—Decided November 7, 1919.

1. It is not error for a trial judge to inform a jury, in a murder case, of the power of supervision possessed by the pardoning tribunal, in case they should bring in a verdict of first degree murder with a recommendation of life imprisonment.
2. In determining the question of the punishment to be imposed in the case of a verdict of first degree murder, the jury may consider the evidence which has been adduced at the trial; and it is not error for the trial court to instruct them that they may supplement their verdict by a recommendation of imprisonment at hard labor for life if they conclude that by reason of the circumstances of the case, or because of any other reason, such action will be justified.
3. It cannot be said, as a matter of law, that if a criminal homicide be the result of an irresistible impulse, existing in the mind of the defendant (assuming that the law recognizes such an impulse as an element to be considered in determining the degree of guilt of the defendant), he cannot be convicted of murder in the first degree.
4. The doctrine that a criminal act may be excused or mitigated upon the notion of an irresistible impulse to commit it, where the offender has the mental capacity to appreciate his legal and moral duty in respect to it, has no place in the law.

On writ of error to the Essex Oyer and Terminer.

Before GUMMERE, CHIEF JUSTICE, and Justices MINTURN and BLACK.

For the plaintiff in error, *Andrew Van Blarcom.*

For the state, *J. Henry Harrison,* prosecutor of the pleas, and *John A. Bernhard,* assistant prosecutor.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in error was indicted for the murder of his mistress, one Florence Hicks. He was convicted on the trial of the indictment and the jury

by its verdict declared that his crime was that of murder in the first degree. He seeks now to have that conviction reversed for alleged errors contained in the charge of the court to the jury.

The supplement to the Crimes act passed in 1916 (*Pamph. L., p.* 576) provides that in the case of the conviction of a person for murder in the first degree the jury may "recommend imprisonment at hard labor for life, in which case this and no greater punishment shall be imposed." In speaking of this statutory provision, in the charge to the jury, the trial court used the following language: "One of the elements to be considered by you in determining the punishment is that if you shall, by your verdict, impose life imprisonment, it can be disregarded and set at naught by the Court of Pardons, as well as by the provision of the statute, to the effect that every convicted prisoner confined in state's prison for the term of his natural life, whose record of conduct shows that he has observed the rules of the institution, and who has served not less than fifteen years, may be released on parole." The validity of this instruction is challenged by the first assignment of error, for the reason that the only purpose of the trial court, in referring to the fact that Carrigan might be paroled or pardoned, was to improperly influence the jury against a recommendation to life imprisonment. But, assuming that the instruction had a tendency to influence the jury in determining whether or not to recommend life imprisonment, the question is whether it was erroneous on that account, and that, we think, has been settled against the contention of the plaintiff in error by the decision of the Court of Errors and Appeals in *State* v. *Rombolo,* 89 *N. J. L.* 565, in which that court, speaking of the supplement of 1916, says: "Naturally, one of the elements to be considered by them (the jury) in determining the punishment is whether, if they shall by their verdict impose life imprisonment, it can be disregarded and set at naught by the Court of Pardons. We see no reason why they should not be informed" * * * with relation to the power of supervision possessed by the pardoning tribunal.

It was further contended that the trial court, while still referring to the power conferred upon the jury by the supplement of 1916, committed error in the following instruction: "If you find the defendant guilty of murder in the first degree you may, if in your judgment you conclude that the circumstances of the case so warrant, and your duty to the community and your oaths will justify it, or for any other reason, supplement such verdict by a recommendation of imprisonment at hard labor for life. If you do not elect to make such a recommendation, the law provides that the death penalty shall be imposed. The responsibility is on you to determine by your verdict whether the facts and circumstances developed in this case are of such a character as to justify you in bringing in such a recommendation." The first criticism upon this instruction is that it comes within the condemnation of the opinion of the Court of Errors and Appeals, in *State* v. *Martin,* 92 *N. J. L.* 436, for the reason that it leaves it to the jury to consider the facts and circumstances of the case in determining whether or not they shall make the recommendation which the statute permits. It is true that the court in the case cited stated that whether or not a recommendation should be made by the jury was a matter entirely discretionary with that body and did not require the support of evidence because it was not a finding of fact, and that for that reason the trial court was not justified in suggesting to the jury the consideration of the character of the crime as shown by the evidence produced on the question of the guilt or innocence of the accused as a reason for withholding the recommendation. But the question being considered in that case was the propriety of the action of the trial court in undertaking to influence this discretionary power vested by the statute in the jury by a comment on those portions of the evidence which made most strongly against the defendant. It was not declared, and we do not think it was intended to be suggested, that the jury had no right, in determining the character of the punishment, to consider the facts and circumstances which had been proved in the case. All that the court said was that the jury were not bound to consider such evidence if they saw fit to disregard it.

The language of the court in this regard is as follows: "While a jury may be influenced to recommend life imprisonment as a punishment by the very matters which evidence the guilt of the accused, and perhaps properly so, still in law the jury are not bound to consider such evidence in determining whether to make or refuse a recommendation. That matter is entirely discretionary with the jury and does not require the support of evidence, for it is not a finding of fact." The statement that the matter is one which calls for the exercise of *discretion* is significant. The word connotes absolute freedom to decide according to one's own judgment; and the exercise of judgment necessarily presumes the existence of facts or conditions known to the jury and upon which the judgment of its members is to be exercised. The distinction is between a decision which rests upon the judgment of the party making it and one which is the result of pure caprice or which is left to be determined by chance; and it needs no argument to satisfy the thinking mind that it was not the intention of the legislature that the character of the punishment to be meted out to the convicted prisoner should be left to the mere whim of the jury; or that it should be determined by drawing lots or tossing a coin in the jury room.

Conceiving that there is nothing in the Martin case which negatives the right of the jury in determining the question of punishment to consider the evidence which has been adduced at the trial, we see no reason why the trial court may not instruct them that they may supplement their verdict by a recommendation of imprisonment at hard labor for life, if they conclude that by reason of the circumstances of the case, or because of any other reason, such action will be justified.

It is further said that the last sentence of the extract from the charge, viz., "the responsibility is on you to determine by your verdict whether the facts and circumstances developed in this case are of such a character as to justify you in bringing in such a recommendation," requires the jury to determine the question of recommendation *vel non* entirely from the facts and circumstances which were proved in the case, and it is said that this is clearly within the condemnation of

State *v.* Martin. It would be if considered as an isolated instruction, but it is to be read in connection with what preceded it, and we think that the whole instruction made it quite plain to the jury that they should consider not only these facts and circumstances, but also their duty to the community, the obligation of their oaths, and any other reason which should be pertinent in the determination of that matter.

Counsel for the defendant requested the court to charge that: "If the jury find that there existed in the defendant's mind an irresistible impulse to take the life of the deceased, and the shooting took place under the influence of such an impulse, the defendant cannot be convicted of murder in the first degree," and the refusal of this request is also assigned as a ground for reversing this conviction. The fundamental proposition embodied in the request is that an act done under an irresistible impulse cannot, as a matter of law, be willful, deliberate and premeditated within the meaning of our statute defining murder in the first degree. The proposition is untenable. Conceding for the moment that the law recognizes the existence of an impulse which is irresistible as an element to be considered in determining the grade of a criminal homicide, the question in every case where that element exists is whether the act was willful, deliberate and premeditated, notwithstanding that its perpetration was the result of such impulse; and that question is clearly one of fact, to be settled by the jury, for it involves the mental operations of the defendant, and they are not to be resolved by the arbitrary application of legal rules but by a consideration of the facts and circumstances of the case which throw light thereon.

We think also that the request was properly refused upon a broader ground. We consider to be unsound the suggestion that the law recognizes a form of insanity in which the faculties are so affected that the person suffering from it, although he perceives and appreciates the moral quality of his acts, is unable to control them and is urged by some mysterious pressure, which he cannot resist, to their commission. It may be that such a mental condition is recognized by medical or scien-

tific authority, but the doctrine that a criminal act may be excused or mitigated upon the notion of an irresistible impulse to commit it, where the offender has the mental capacity to appreciate his legal and moral duty in respect to it, has no place in the law. And this we understand to be the view expressed by the Court of Errors and Appeals in *Genz* v. *State,* 59 *N. J. L.* 488; the declaration of the court, in affirming a conviction of murder in the first degree, being that "where insanity is set up as a defence to an indictment for murder, unless it appears that the prisoner was not conscious, at the time of the killing, that the act which he was doing was morally wrong, he is responsible, even if it be shown that he was impelled to its commission by an impulse which he was unable to resist."

Only those reasons for reversing the conviction which have been discussed by us were argued by counsel for the defendant. Finding no legal merit in them, we conclude that there must be an affirmance.